# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE SUZANNE KARL,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:21-cv-01576-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.  INTRODUCTION

Plaintiff Michele Suzanne Karl ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.  BACKGROUND

Plaintiff was born on September 25, 1971, completed high school, and previously worked as a real estate broker/manger. (Administrative Record ("AR") 27, 28, 71, 72, 116, 129, 133, 145, 276, 325, 357, 281, 301.) Plaintiff filed a claim for DIB on August 27, 2019, alleging she became disabled on May 2, 2019, due to right eye blindness, prosthetic ankle, high blood pressure, anxiety depression,

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 8.)

and anemia.  (AR 15, 116, 133, 134, 276, 280, 325.)

**A.     Relevant Evidence of Record[2]**

    **1.       Medical Evidence**

In September 2019, Plaintiff presented to an ophthalmologist complaining that a cyst in her eye is getting bigger.  (AR 532.)  The provider found that Plaintiff's "visual acuity was 20/70 in the right eye and 20/50 in the left eye with her contact lenses," which she "occasionally . . . wears."  (AR 532.)  The provider indicated Plaintiff had a "scar on the twelve o'clock position of the right cornea," but that the area "is not inflamed and no surgery is indicated."  (AR 532.)

During a physical examination in December 2020, Plaintiff denied vision changes and vision loss and her eye examination was normal.  (AR 1281, 1282.)  In January 2021, Plaintiff reported a loss of vision.  (AR 1306.)

    **2.       Opinion Evidence**

In December 2019, D. Tayloe, M.D.[3], a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[4]  (AR 127–29.)  Dr. Tayloe found, inter alia, that Plaintiff's near and far acuity in her right eye were limited and that she "[m]ay need large size print."  (AR 128–29.)  Upon reconsideration in April 2020, another state agency physician, Jerda M. Riley, M.D., reviewed the record and found that Plaintiff's visual impairments were nonsevere.  (AR 143.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 10, 2020, and again on reconsideration on April 22, 2020.  (AR 15, 149–53, 157–62.)  Consequently, Plaintiff

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] Both the ALJ and Plaintiff refer to the state agency physician as "D. Taylor," however the medical record indicates that the correct name is "D. Tayloe" (*see* AR 129).

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

requested a hearing before an Administrative Law Judge ("ALJ"). (AR 163–64.) The ALJ conducted a hearing on February 17, 2021. (AR 36–60.) Plaintiff appeared at the hearing with her attorney representative and testified as to her alleged disabling conditions and work history. (AR 42–55.) A Vocational Expert ("VE") also testified at the hearing. (AR 55–59.)

**C.     The ALJ's Decision**

In a decision dated March 25, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–29.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 18–29.) The ALJ decided that Plaintiff last met the insured status requirements of the Act on March 31, 2022, and she had not engaged in substantial gainful activity during the period from her alleged onset date of May 2, 2019, through her date last insured of March 31, 2020 (step one). (AR 18.) At step two, the ALJ found Plaintiff's following impairments to be severe: left tibia/fibula fracture, ankle dislocation status-post open reduction and internal fixation, and left ankle arthroplasty and hardware removal; cellulitis, left anterior ankle/traumatic arthritis; anxiety disorder; disorder of the spine; idiopathic neuropathy; varicose veins; right eye vision loss; chronic pain disorder; and obesity. (AR 18–19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19–21.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR [§] 404.1567(a), with the following additional limitations: [Plaintiff] could occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; frequently use near and far visual acuity with the right eye; never tolerate exposure to unprotected heights; she required a cane to ambulate carried in the dominant right hand; and she could perform simple and routine tasks.

(AR 21–27.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony

3

as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 22.)

The ALJ determined that, given her RFC, Plaintiff could not perform her past relevant work (step four), but she could perform a significant number of other jobs in the local and national economies (step five). (AR 27–29.) The ALJ concluded that Plaintiff was not disabled through March 31, 2020, the date last insured. (AR 29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 24, 2021. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of

performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a

specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.     DISCUSSION

Plaintiff contends that the ALJ's RFC determination that she can "frequently use near and far visual acuity with the right eye" is unsupported by substantial evidence. He asserts that the ALJ "had no guidance from any medical professional to effectively glean from the record the most that Plaintiff could perform in terms of vision" and that the ALJ should have developed the record by "contacting any of Plaintiff's physicians or [] order[ing] a consultative examination in order to assist in the interpretation of the evidence pertaining to Plaintiff's visual acuity." (Doc. 14 at 14, 16. *See also* Doc. 17 at 5–6.) According to Plaintiff, the ALJ failed to create a "logical bridge" between the evidence and their conclusion and instead relied on her lay interpretation of the medical evidence, while ignoring the findings of the state agency physician Dr. Tayloe that Plaintiff "may require large print." (*See* Doc. 14 at 15, 18–19; Doc. 17 at 3.) Plaintiff contends that because the ALJ failed to develop the record, substantial evidence does not support the ALJ's RFC determination and the matter should be remanded for further administrative proceedings. (*See* Doc. 14 at 14, 20.)

The Acting Commissioner responds that Plaintiff failed to preserve the issue for appeal because her counsel told the ALJ at the hearing that the record was complete. (Doc. 16 at 4–6.) The Acting Commissioner contends, alternatively, that no duty to develop the record arose because the ALJ considered all of the evidence in the record, which was "complete" per counsel's representation,

in assessing Plaintiff's RFC, and that Dr. Tayloe's observation that Plaintiff "[m]ay need large size print" was merely a recommendation that did not need to be incorporated. (*Id*. at 6–10.) The Commissioner maintains that the ALJ's RFC assessment was therefore based on substantial evidence supported from interferences reasonably drawn from the record and should be affirmed. (*Id*.)

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.    Legal Standard**

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin*., 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity"). In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec*., 359 F.3d 1190, 1197 (9th Cir. 2004). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [their] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**B.    Analysis**

**1.    Plaintiff's Challenge to the Incompleteness of the Record Has Not Been Preserved**

Preliminarily, as a rule, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Here, as the Commissioner points out, Plaintiff was represented by counsel at the administrative hearing—the same counsel who represents her before this Court—who expressly stated that the record was complete when asked by the ALJ. (AR 42

("ALJ: Is the record complete? ATTY: Yes, Your Honor.").); *see Meanel*, 172 F.3d at 1115; *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009) (issue waived because attorney had opportunity to raise it at administrative hearing but did not do so); *Ryan Patrick A. v. Berryhill*, No. EDCV 17-2526-JPR, 2019 WL 1383800, at *7 (C.D. Cal. Mar. 27, 2019) (issue forfeited where the plaintiff was represented by counsel at the administrative hearing, who twice stated that the record was complete); *Valdez v. Berryhill*, Case No. SA CV 16-0980 JCG, 2018 WL 317799, at *1 (C.D. Cal. Jan. 5, 2018) (issue not properly preserved where the plaintiff was represented by counsel at the administrative hearing and specifically stated he had "no objection" to the record when asked by the ALJ). Accordingly, the issue is not properly preserved for appeal. *See Smith v. Saul*, No. 1:19-cv-01085-SKO, 2020 WL 6305830, at *7 (E.D. Cal. Oct. 28, 2020).

### 2.   The ALJ Had No Duty to Develop the Record

Even if the issue had not been forfeited, *cf. Balli v. Comm'r of Soc. Sec.*, No. 1:21-CV-00645-EPG, 2022 WL 14751485, at *1 (E.D. Cal. Oct. 25, 2022), Plaintiff has not shown that it warrants remand. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized record evidence spanning 2018 through 2020 and found with the support of that record that Plaintiff had not established she was disabled. (AR 21–27.) The record contained what appears to be Plaintiff's complete treatment records that supported the ALJ's findings and did not present an ambiguity or inadequacy. That the ALJ did not obtain a consultative examination regarding Plaintiff's visual impairments is not, as Plaintiff advances, an indication that the record was deficient, as such decisions are well within the ALJ's discretion. *See Pederson v. Colvin*, 31 F. Supp. 3d 1234, 1244 (E.D. Wash. 2014) ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.'") (quoting *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)). *See Albrecht v. Astrue*, No. 1:11-cv-01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (Consultative examination regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to

8

resolve an inconsistency).

Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician as to her ability to work or her functional limitations related to her visual impairments. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512 ("In general, you have to prove to us that you are blind or disabled.  You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").  The record contained Plaintiff's complete treatment records, as counsel conceded, and no "gaps" or inconsistencies were noted. *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete).  *See also Randolph v. Saul*, 2:18-cv-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (same).  In the absence of any inadequacy or ambiguity in the record, which Plaintiff has not shown, the ALJ had no duty to develop it further.

### 3. The ALJ Did Not Harmfully Err in Formulating Plaintiff's RFC

Plaintiff's primary criticism of the ALJ's RFC assessment is her claim that it was the result of the ALJ improperly imposing their own lay interpretation of the medical evidence.  (*See* Doc. 14 at 14–16; Doc. 17 at 5–6.)  This argument is unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-

CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

According to the record, the only expert medical opinions regarding Plaintiff's visual impairments are those of state agency physicians Drs. Tayloe and Riley. (AR 26, 27.) The ALJ considered these opinions in the content of the longitudinal record and found them to have to be "partially persuasive" and of "limited persuasiveness," respectively (which Plaintiff does not challenge), as they were not entirely consistent with the "longitudinal evidence showing that [Plaintiff] had a 'severe' visual impairment," including evidence showing a loss of vision. (AR 26 (citing AR 1306).) The ALJ, as they are charged to do, then interpreted that evidence in conjunction with other evidence in the record, such as medical records showing that Plaintiff's visual acuity was "significantly improved with contact lenses" and that there was no inflammation in her right eye and no surgery indicated (*see* AR 25 (citing AR 532)), and formulated Plaintiff's RFC. The ALJ also considered Plaintiff's testimony that she drove a vehicle, read, and watched television (AR 26). The ALJ was entitled to review and interpret this evidence. *See, e.g., Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted) (distinguishing *Cortez v. Colvin*, No. 15-00102, 2016 WL 3541450, at *6 (E.D. Cal. June 24, 2016)); *Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). *See also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); *id*. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual functional capacity.").

The legal authority on which Plaintiff relies is inapposite. (*See* Doc. 14 at 17.) For example,

in *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032 (E.D. Cal. May 26, 2020), the ALJ considered "new" evidence subsequent to a medical opinion, made an independent evaluation of the diagnosed impairments on plaintiff's ability to work on a function-by-function basis based on that subsequent evidence, and found the effects of any such impairments negligible. *See id*. at *2. Here, there is no new evidence at issue, and, instead of "negligible" impairments, the ALJ ultimately formulated an RFC that included restrictions to account for Plaintiff's severe right-eye limited "near and far acuity," where no visual restrictions were found by one of the only two opining physicians (*compare* AR 18 *with* AR 143).

Plaintiff further does not specify what additional functional limitations the record might establish that were not accounted for in the ALJ's RFC assessment and how such limitations would eliminate all jobs in the national economy that Plaintiff could have performed. *Cf. Victor V. v. Comm'r of Soc. Sec.*, No. 3:20-CV-05651-BAT, 2021 WL 1138226, at *2 (W.D. Wash. Mar. 25, 2021) (rejecting argument that ALJ did not account for "limited near and fair acuity" where the ALJ included a hazard prohibition in the RFC). *See* TITLES II & XVI: CAPABILITY TO DO OTHER WORK-THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, SSR 85-15 (S.S.A. 1985) ("As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels.") Nor does Plaintiff otherwise show any inconsistency between the record and her RFC. To the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110.

Finally, with respect to Dr. Tayloe's statement that Plaintiff "[m]ay need large size print" (AR 129), the Court finds such statement is not an opinion that Plaintiff *requires* large size print, as she posits, but is instead a *suggestion* or *recommendation* lacking any functional limitation. Where a physician's opinion does not contain a functional limitation, "the ALJ is not required to

provide reasons for rejecting that opinion." *Benear v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04160-PHX-JAT, 2019 WL 258345, at *15 (D. Ariz. Jan. 18, 2019); *see also Smith v. Berryhill*, 708 F. App'x 402, 403 (9th Cir. 2017) ("The ALJ did not err by not providing reasons to reject Dr. Ashcraft's letter because the letter contained no opinions as to [the claimant's] functional limitations."); *Turner*, 613 F.3d at 1223 ("[T]he ALJ did not need to provide 'clear and convincing reasons' for rejecting [the physician's] report because the ALJ did not reject any of [the physician's] conclusions."). Because Dr. Tayloe's statement did not opine to a functional limitation of large size print, the Court finds the ALJ did not err in failing to consider such limitation in formulating their RFC assessment.

In sum, the Court finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## V.  CONCLUSION AND ORDER

After consideration of Plaintiff's and the Acting Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  **June 1, 2023**                              /s/ *Sheila K. Oberto*
                                                  UNITED STATES MAGISTRATE JUDGE